**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Karim Al-Abbaddy,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Commissioner of the Social Security Administration,<br><br>　　　　Defendant. | CIV 13-1489-PHX-MHB<br><br>**ORDER** |

Pending before the Court is Plaintiff Karim Al-Abbaddy's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On April 30, 2010, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning January 1, 2010. (Transcript of Administrative Record ("Tr.") at 11, 156-62, 163-70.) His applications were denied initially and on reconsideration. (Tr. at 98-104, 106-111.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 113-14.) A hearing was held on November 7, 2011, (Tr. at 25-61), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 8-23). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2)  determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2010 – the alleged onset date. (Tr. at 13.) At step two, he found that Plaintiff had the following severe impairments: tobacco abuse, posttraumatic stress disorder; depression; mild lumbar stenosis; cervicalgia; thoracic and lumbar pain. (Tr. at 13.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 13-15.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following exceptions: capable of simple, unskilled work with occasional decision making, occasional changes in the work setting, and occasional interaction with the public and coworkers."[1] (Tr. at 15-18.) The ALJ stated that Plaintiff is capable of performing past relevant work as an auto washer and found that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (Tr. at 18-19.)

Therefore, the ALJ concluded that Plaintiff has not been under a disability from January 1, 2010, through the date of his decision. (Tr. at 19.)

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

1  \\\

## IV.  DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; and (2) failing to fully develop the record.  Plaintiff requests that the Court remand for determination of benefits.

**A.    Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence.  Specifically, Plaintiff argues that the ALJ did not appropriately weigh the opinions of physicians from the Jewish Family and Children's Services (JFCS), Dr. Inayat Alikhan, Dr. T.A. Tahir, and Dr. Dale Ratcliffe.

"The ALJ is responsible for resolving conflicts in the medical record."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164.  Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record.  In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight is given to a treating physician's opinion.  See id.  The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion.  See id.; Reddick, 157 F.3d at 725.  An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Reddick, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than treating or examining physicians.  See Lester, 81 F.3d at 831.  Although an ALJ generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it

1  is consistent with other independent evidence in the record. See Thomas v. Barnhart, 278
2  F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may
3  consider "the amount of relevant evidence that supports the opinion and the quality of the
4  explanation provided; the consistency of the medical opinion with the record as a whole;
5  [and] the specialty of the physician providing the opinion ... ." Orn v. Astrue, 495 F.3d 625,
6  631 (9th Cir. 2007).

7      Since both examining and reviewing physicians, as well as, other objective medical
8  evidence in the record contradicted the physicians which Plaintiff relies upon in his brief, the
9  specific and legitimate standard applies.

10     Historically, the courts have recognized the following as specific, legitimate reasons
11 for disregarding a treating or examining physician's opinion: conflicting medical evidence;
12 the absence of regular medical treatment during the alleged period of disability; the lack of
13 medical support for doctors' reports based substantially on a claimant's subjective complaints
14 of pain; and medical opinions that are brief, conclusory, and inadequately supported by
15 medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d at 1216; Flaten v. Secretary of
16 Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d
17 597, 604 (9th Cir. 1989).

18     The ALJ considered the following medical evidence as set forth in the administrative
19 record and in his decision to deny Plaintiff's claim for disability insurance benefits and
20 supplemental security income.

21     Plaintiff was treated at Desert Pain & Rehab Specialists (DPRS) in January 2010 for
22 lower back pain. His spinal range of motion was slightly limited, but his physical
23 examination was otherwise unremarkable. At a subsequent appointment in February,
24 Plaintiff had pain in his mid- and lower back, lower back spasms, and positive straight leg
25 raise tests (a test for radicular pain) bilaterally, but a normal gait and normal motor function
26 in his extremities. Plaintiff returned the next week, requesting hydrocodone for pain relief
27 and stating that he was planning a trip to Iraq in the near future. (Tr. at 266-322.)

28

1  Plaintiff returned to DPRS again in April 2010; he indicated that he had been in Iraq 2 for the past two months. An MRI of Plaintiff's lumbar spine in May 2010 revealed 3 "[b]orderline mild narrowing" of the spinal canal at two levels in the lower back and a "mild" 4 disc bulge at one level. An MRI of his mid-back revealed only "[m]ild degenerative 5 changes" at a few levels but was otherwise normal. Plaintiff cancelled an appointment at 6 DPRS in May 2010 and was a "no show" at his next two appointments in June 2010. (Tr. 7 at 266-322.)

8  In July 2010, Keith Cunningham, M..D., conducted a consultative examination of 9 Plaintiff in connection with his disability claims. (Tr. at 256-262.) Plaintiff complained of 10 vague, diffuse body pain since 2001, and stated that he had constant pain such that he could 11 barely move or walk. Dr. Cunningham noted that Plaintiff was "a very limited historian and 12 gave a very poor effort." Plaintiff reported smoking three-quarters of a pack of cigarettes 13 daily. On physical examination, Dr. Cunningham observed that Plaintiff "had very poor 14 effort ... He will not participate in the exam whatsoever ... When I touch him anywhere, he 15 has pain, which is completely exaggerated." Dr. Cunningham found that Plaintiff had "good 16 muscle tone and development throughout" and that his back was "symmetric" and 17 "well-developed." However, Plaintiff refused to participate in coordination or further testing. 18 Dr. Cunningham assessed Plaintiff with chronic pain syndrome with high pain behavior, 19 consistent with malingering, and noted that Plaintiff's subjective complaints outweighed the 20 objective findings. He concluded that Plaintiff's condition would not impose any limitations 21 for 12 continuous months. (Tr. at 256-262.)

22  Plaintiff was evaluated again by DPRS in July 2010. Treatment notes indicated that 23 he was in "no apparent distress," had back spasms and limited spinal range of motion, but 24 a normal gait and station and full functional range of motion in his extremities. In August 25 2010, Plaintiff was seen at DPRS reporting "very severe pain." Upon examination, Plaintiff 26 exhibited "very poor lower extremity range of motion," but the treating provider felt that he 27 was "pulling back." Although Plaintiff exhibited a "slow gait with a very antalgic station" 28 in front of the treating provider, after the examination, Plaintiff was observed by the treating

1 provider leaving the building on a video camera; she noted that he was "walking down the
2 hallway following [a] medical assistant ... who was moving at a pretty good pace. [Plaintiff]
3 had no difficulty keeping up with him ... [Plaintiff] appears to have no problems with
4 ambulation, except when he is in front of a provider." (Tr. at 266-322.)

5 Plaintiff began psychiatric treatment for depression with Inayat Alikhan, M.D., in
6 September 2010. (Tr. at 323-31.) At his second visit, Plaintiff had started taking an
7 anti-depressant (Cymbalta), which he was tolerating well, and his sleep and appetite had
8 improved. At the end of September 2010, Dr. Alikhan opined that Plaintiff was "suffering
9 from severe depression, recurrent type" and would not be able to "engage in gainful
10 employment for [the] next 12 months." (Tr. at 323-31.)

11 In October 2010, Plaintiff began treatment at Total Medical Care reporting a cough,
12 unexplained weight loss, and low back pain. (Tr. at 340-74.) The treating provider noted
13 that Plaintiff was "negative for anxiety, depression, and sleep disturbances." Upon
14 examination, Plaintiff was "well developed and nourished," in "no apparent distress," and
15 had normal range of motion, strength, and tone; normal reflexes; normal motor and sensory
16 function; and normal gait and coordination. He was advised to discontinue smoking. (Tr.
17 at 340-74.)

18 Plaintiff returned to Total Medical Care in January 2011. Plaintiff reported lower
19 back pain and a "mild degree" of depression to the treatment provider. He had some spinal
20 pain with range of motion, but his physical examination was otherwise normal. (Tr. at 340-
21 74.) That same month, Plaintiff told Dr. Alikhan that he was depressed and unable to focus,
22 but was "doing some house work to keep himself occupied." (Tr. at 335-38.) Dr. Alikhan
23 prescribed another anti-depressant (Prozac) and recommended that Plaintiff "continue
24 working." Later in January 2011, Dr. Alikhan completed a questionnaire for Plaintiff,
25 opining that he had "moderate" to "extreme" mental limitations. (Tr. at 335-38.)

26 In March 2011, Dr. T.A. Tahir wrote a letter for Plaintiff stating that he had seen
27 Plaintiff in his "private clinic six months ago" (treatment notes do not appear in the record)
28

1    with symptoms of depression, lack of concentration, poor appetite, suicidal thoughts, and
2    sleep disturbances. (Tr. at 339.)

3           In April and May 2011, Plaintiff was treated again at Total Medical Care. The
4    treating provider indicated that Plaintiff had normal range of motion, strength, and tone in
5    his muscles, and his reflexes, coordination, and gait were all intact. (Tr. at 340-74.)

6           Plaintiff also returned to DPRS in April 2011; he reported that his pain level was
7    about a five out of a possible 10. He reported "moderate improvement" due to pain
8    medication and denied any side effects. His gait was slow and antalgic and he had tenderness
9    in his mid to upper back, but his straight leg raise tests were negative (i.e., normal) bilaterally
10   and he had full (5/5) strength in all of his extremities. (Tr. at 382-88.)

11          Plaintiff was seen by Michael Fermo, M.D., at Jewish Family and Children's Services
12   (JFCS) in May 2011. (Tr. at 375-81.) Dr. Fermo assessed Plaintiff with depression and
13   post-traumatic stress disorder (PTSD), assigned a Global Assessment of Functioning (GAF)
14   score of 60, and increased his anti-depressant medications. (Tr. at 375-81.)[2]

15          In June 2011, Plaintiff reported lower back pain to the treating provider at Total
16   Medical Care. (Tr. at 340-74.) He stated that his back pain was constant and moderate in
17   intensity, but he had normal range of motion, strength, and tone in his muscles. (Tr. at 340-
18   74.)

19          Plaintiff was seen at DPRS in July and August 2011 for mid- and lower back
20   (thoracolumbar) pain. (Tr. at 382-88.) He rated his pain at a five out of 10 and had
21   tenderness to palpation in his mid- to upper back, but full (5/5) strength in his extremities.
22   (Tr. at 382-88.)

---

26      [2] The GAF (Global Assessment of Functioning) is essentially a snapshot of an
individual's functioning at a specific point in time. A GAF score in the range of 51-60
27   indicates "moderate difficulty in social, occupational, or school functioning."  Am.
Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. text
28   revision 2000) ("DSM-IV-TR").

1    Plaintiff was also treated at JFCS in August 2011; he reported depression and
2 nightmares and was noted to have limited memory, insight, and concentration, but was
3 assigned a GAF score of 60, indicating only moderate limitations. (Tr. at 375-81.)

4    In October 2011, Dr. Ratcliffe completed a Medical Assessment at Plaintiff's request.
5 (Tr. at 392-94.) He opined that Plaintiff could sit for less than one hour at a time and up to
6 two hours in an eight-hour day; stand/walk for less than one hour at a time and stand/walk
7 for a total of one hour in an eight-hour day; occasionally lift up to 10 pounds; and
8 occasionally carry up to five pounds. (Tr. at 392-94.)

9    During the administrative proceedings, State agency physician Ernest Griffith, M.D.,
10 reviewed the record and determined that Plaintiff's failure to cooperate at the consultative
11 examination resulted in insufficient evidence to make a determination. (Tr. at 64-68.)
12 Mikhail Bargan, M.D., later reviewed the record and opined that Plaintiff's physical
13 impairments were not severe. (Tr. at 80-85.) State agency psychologist Larry Waldman,
14 Ph.D., reviewed the record and determined that there was insufficient evidence to establish
15 a mental medically determinable impairment. (Tr. at 86.)

16   In his evaluation of the objective medical evidence, the ALJ first addressed Dr.
17 Cunningham's opinion stating, "Dr. Cunningham diagnosed chronic pain syndrome with
18 high pain behavior, consistent with malingering and noted the subjective complaints
19 outweighed objective findings. He opined the claimant's condition would impose no
20 limitations. This opinion is given great weight because it is consistent with the totality of
21 evidence. However, I have limited the claimant to according to the residual functional
22 capacity above in order to give him the greatest benefit of the doubt." (Tr. at 17, 256-62.)

23   Next, the ALJ discussed the assessments of the State agency experts affording them
24 "great weight." The ALJ found that Drs. Griffith and Waldman opined that there was
25 insufficient evidence of disability to make a determination and Dr. Bargan found that
26 Plaintiff's impairments were nonsevere. The ALJ, however, limited Plaintiff as set forth in
27 his RFC assessment in order to give Plaintiff the greatest benefit of the doubt. (Tr. at 17, 64-
28 70, 80-88.)

- 9 -

1   Then, the ALJ discussed Dr. Alikhan's opinion giving "no weight" as "[t]he physician
2  provides scant analysis to support this level of limitation and there are no treatment notes that
3  support the claimant has marked limitations for simple tasks or decisions." The ALJ
4  continued stating that Dr. Alikhan's treatment notes actually recommend that Plaintiff
5  continue working, indicate no substance abuse, and as of January 7, 2011, no problems.
6  Lastly, the ALJ noted that the treating relationship appears to have been minimal. (Tr. at 17,
7  335-38, 323-31.)

8   The ALJ continued his discussion of the objective medical evidence by addressing the
9  opinions and treatment notes from the JFCS. The ALJ gave "little weight" to the treating
10 physician's opinion given in August 2011, which assigned Plaintiff a GAF of 60, for lack of
11 analysis and support. The ALJ found that the GAF of 60 in August 2011 and 55 in
12 September 2010 were both inconsistent with Plaintiff's treatment notes during those time
13 periods. The ALJ also found that the treating physician in August 2011 saw Plaintiff once
14 for approximately 60 minutes with a relatively normal mental status examination, and noted
15 that treatment records from this same period of time demonstrated that Plaintiff was only
16 mildly depressed and psychologically normal. (Tr. at 17, 375-81, 340-74, 382-88.)

17  Lastly, the ALJ discussed the findings of Dr. Radcliffe giving "little weight" to his
18 October 2011 medical source statement. First, the ALJ found that Dr. Radcliffe's assessment
19 was purely subjective in nature as he merely asked Plaintiff questions on the questionnaire
20 and recorded his answers. The ALJ stated that there is no indication that a physical
21 examination was given. Second, the ALJ found that the limitations opined by Dr. Radcliffe
22 were inconsistent with the objective evidence in the record which demonstrated that Plaintiff
23 has only mild changes in the back and physical examinations have resulted in disparate
24 findings. Third, the ALJ found that Plaintiff's alleged pain and symptoms have been
25 alleviated with treatment and medication, and Plaintiff has been told that he should get
26 regular exercise. (Tr. at 18, 392-94, 266-322, 340-74, 382-88.)

27  The Court finds that the ALJ properly weighed the medical source opinion evidence,
28 and gave specific and legitimate reasons, based on substantial evidence in the record, for

1  discounting the physicians and evidence which Plaintiff relies upon in his brief. The ALJ
2  discredited the various physicians' assessments due to inconsistencies with Plaintiff's
3  treatment record and the medical evidence as a whole. The ALJ also found that the opinions
4  were vague, conclusory, lacked supporting clinical findings, and were based on Plaintiff's
5  own subjective complaints. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.
6  2008) (finding the incongruity between doctor's questionnaire responses and her medical
7  records provides a specific and legitimate reason for rejecting the opinion); Connett v.
8  Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the
9  physician's] extensive conclusions regarding [the claimant's] limitations are not supported
10 by his own treatment notes. Nowhere do his notes indicate reasons why [the physician would
11 limit the claimant to a particular level of exertion]."); Tonapetyan v. Halter, 242 F.3d 1144,
12 1149 (9th Cir. 2001) (holding that the ALJ properly rejected a physician's testimony because
13 "it was unsupported by rationale or treatment notes, and offered no objective medical
14 findings to support the existence of [the claimant's] alleged conditions"); Morgan v. Comm'r
15 Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair, 885 F.2d at 605 (An ALJ
16 may reject a treating physician's opinion if it is based "to a large extent" on a claimant's
17 self-reports that have been properly discounted as incredible.)[3] Therefore, the Court finds
18 no error.
19 \\\
20 \\\
21

22     [3] In his brief, Plaintiff argues that the ALJ did not discuss Dr. Tahir's letter. As stated
23 previously, in March 2011, Dr. Tahir wrote a two-sentence letter for Plaintiff stating that he
   had seen Plaintiff in his "private clinic six months ago" with symptoms of depression, lack
24 of concentration, poor appetite, suicidal thoughts, and sleep disturbance. (Tr. at 339.) There
   are no treatment notes or other medical documentation supplied with Dr. Tahir's letter. And,
25 Dr. Tahir failed to indicate that Plaintiff had any functional limitations or form any opinion
26 as to Plaintiff's ability to work. Thus, the relevance of Dr. Tahir's letter to the ALJ's residual
   functional capacity assessment is unclear, and Plaintiff has failed to establish that Dr. Tahir's
27 letter would have changed the outcome of his case. See Burch v. Barnhart, 400 F.3d 676,
28 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."
   (citation omitted)).

- 11 -

**B.     Development of the Record**

Plaintiff argues that the ALJ did not "fairly and fully develop the record." Specifically, Plaintiff contends that at the November 7, 2011 hearing, counsel advised the ALJ that there were additional medical records that needed to be submitted. As such, counsel asked to have the record left open for the submission of these documents. The ALJ granted the request and advised that the record would be left open for two weeks. Apparently, in need of more time to submit the additional material, a letter was sent to the ALJ requesting an extension of time. The record reflects that the ALJ did not receive or was not notified of Plaintiff's request. The supplemental material was never submitted and the ALJ's decision was issued on December 1, 2011.

The ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d at 1150 (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ must be especially diligent when the claimant is not represented and "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts." Id.; see Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). However, "an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate for proper evaluation of evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Ultimately, it is the plaintiff's burden to prove that he or she is disabled. See id. at 459 (citing 42 U.S.C. § 423(d)(5) (Supp. 2011)).

The ALJ had a chronology of detailed medical records from Plaintiff's treating physicians, as well as, the examining and non-examining physicians. Plaintiff provided ample documentation during the entire administrative process. There is no evidence of missing but relevant pieces of the puzzle, such as missing reports or ambiguous conclusions. Furthermore, the ALJ did not need to order additional testing or evaluation, as sufficient testing had already been performed. In addition, Plaintiff's lack of cooperation was well documented. The amount of testing conducted was entirely consistent with the impairments about which Plaintiff complained. And, existing medical records were produced by

Plaintiff's treating providers. Since the record fails to demonstrate ambiguous evidence or an inadequate record to allow for proper evaluation of the evidence, the Court finds that the ALJ had no duty to further develop the record.

## V. CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits and supplemental security income in this case. Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 22nd day of August, 2014.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge